GENERAL ELECTRIC COMPANY–
MEDICAL SYSTEMS GROUP,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 00–1263.

United States Court of Appeals,
Federal Circuit.

April 19, 2001.

Patrick C. Reed, Wasserman, Schneider, Babb & Reed, of New York, New York, argued for plaintiff-appellant.

Amy M. Rubin, Trial Attorney, Commercial Litigation Branch, Civil Division, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With her on the brief David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and Joseph I. Liebman, Attorney In Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, United States Customs Service, International Trade Litigation, of New York, New York.

Before MAYER, Chief Judge, MICHEL and GAJARSA, Circuit Judges.

MAYER, Chief Judge.

General Electric Company—Medical Systems Group (GE) appeals the judgment of the United States Court of International Trade, *General Elec. Co.—Med. Sys. Group v. United States,* 86 F.Supp.2d 1291 (Ct. Int'l Trade 2000), which granted the United States Customs Service's (Customs) motion for summary judgment dismissing GE's challenge to Customs' classification of its merchandise. We reverse.

*Background*

Between 1992 and 1994, GE imported 98 multiformat cameras (MFCs), 97 of which were for use solely with computerized tomography (CT) x-ray scanners. One MFC, of a different model, was for use with a magnetic resonance imaging (MRI) system. A MFC is an apparatus containing an internal cathode-ray-tube monitor that displays a computer-generated image and a camera assembly that photographs

the monitor's display screen. When connected to the CT or MRI system, the computer-generated image created from the CT system's x-rays or the MRI system's magnetic resonances is transmitted to the MFC's display monitor. The camera lens is aimed at the screen monitor in order to photograph the screen and the displayed image. The MFC produces a hard-copy photograph on x-ray film. The term "multiformat" refers to the apparatus' ability to produce multiple images on a single sheet of x-ray film. Because of the electro-magnetic field produced by the MRI system, MFC models designed for use in CT systems cannot be used with MRI systems. The cathode-ray-tube monitor assembly in the MFC model for MRI systems is enclosed in a metal protective shield.

Although the manufacturer sets the lens assembly of the MFC in a fixed position, there are several ways to adjust its output quality. The internal display monitor has an adjustment knob accessible to the system operator. This affects the finished photograph because the camera records the image displayed on the screen. In addition, the distance between the lens and the film plane in the camera assembly, and thereby the picture quality, may be adjusted by inserting or removing washers. Finally, the focus ring on the unit's "small image" lens may be adjusted by removing a factory installed silicone seal. These last two adjustments are intended to be performed only by a trained service engineer during periodic maintenance scheduled every three months.

The primary issue in this case is the proper classification under the Harmonized Tariff Schedule of the United States (HTSUS) for the 97 MFCs used exclusively in CT systems. The parties dispute which of the following headings and subheadings constitute the proper classification for MFCs:

| | | |
|---|---|---|
| 9006 | Photographic (other than cinematographic) cameras; ...: | |
| | . . . | |
| | Other cameras: | |
| | . . . | |
| 9006.59 | Other: | |
| | 9006.59.40 | Fixed focus ... |
| | | Other than fixed focus: |
| | | . . . |
| | 9006.59.90 | Valued over $10 each |
| 9022 | Apparatus based on the use of X-rays ..., including ... X-ray tubes and other X-ray generators, ... control panels and desks, screens, examination or treatment tables, chairs and the like; parts and accessories thereof: | |
| | . . . | |
| 9022.90 | Other, including parts and accessories: | |
| | . . . | |
| | Parts and accessories: | |
| | . . . | |
| | | Other: |
| | 9022.90.60 | Of apparatus based on the use of X-rays |

HTSUS (1992 ed. Supp. 1).

Customs classified the MFCs under subheading 9006.59.40 as fixed focus cameras. GE timely protested the classification, which Customs denied, and GE challenged the classification in the Court of International Trade. GE claimed that the MFCs are more properly classified under subheading 9006.59.90, as other than fixed

focus cameras valued at over $10 each. In the alternative, GE claimed that the MFCs should be classified under subheading 8479.89.90, as other machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter.

GE moved for partial summary judgment on the 9006.59.90 claim and Customs cross-moved for summary judgment dismissing both of GE's claims. In its reply, GE did not oppose Customs' cross-motion as to the 8479.89.90 claim, but filed a proposed amended consolidated complaint that incorporated a new claim. It based the new claim in-part on statements in Customs' reply brief that the display monitor is separate from the camera assembly. GE argued that because the MFCs contain both a camera and a display monitor separate from the camera, they are a combination apparatus, and are properly classified under subheading 9022.90.60 as parts and accessories, other, of apparatus based on the use of x-rays.

GE did not file a formal motion to amend its complaint under local rule 15(a) and did not amend its motion for partial summary judgment. Its reply brief argued that the 9022.90.60 claim had been litigated with the implied or express consent of the defendant, and, therefore, under local rule 15(b), the pleading should be amended to conform to the evidence. In its reply brief, Customs addressed GE's 9022.90.60 claim and both parties discussed the claim in their post-argument briefs.

The Court of International Trade declined to consider the amended complaint under local rule 15(a). In addition, the court rejected GE's argument that it should amend the pleadings to conform to the evidence under local rule 15(b). The court stated that rule 15(b) only applies when a trial has been or is being held, not when summary judgment was entered be-fore trial. However, the court recognized its duty, under *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed.Cir.1984), to find the correct result, and reviewed the proposed alternative classification. The court held that MFCs did not fall under subheading 9022.90.60 because they are not exclusively or primarily used with CT scanner systems and MFCs are not "presented with" any "x-ray apparatus." It therefore held that MFCs are separately presented cameras properly classified under heading 9006. The court granted Customs' motion for summary judgment dismissing the claims and denied GE's motion for summary judgment because MFCs are fixed focus cameras properly classified under subheading 9006.59.40. GE appeals the classification of MFCs under heading 9006 and in the alternative argues that MFCs are not fixed focus under 9006.59.40, but rather other than fixed focus and properly classified under subheading 9006.59.90. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

*Discussion*

We review the court's grant of summary judgment without deference. *See Mead Corp. v. United States*, 185 F.3d 1304, 1306 (Fed.Cir.1999), *cert. granted*, 530 U.S. 1202, 120 S.Ct. 2193, 147 L.Ed.2d 231 (2000). Furthermore, where Customs has not issued a regulation, but merely a classification ruling implicitly interpreting an HTSUS provision, we accord the classification no deference. *See id.* at 1306–1307. Where the parties do not dispute material facts regarding the imported goods, review of the court's judgment collapses into a determination of the proper meaning and scope of the HTSUS terms. *See SGI, Inc. v. United States*, 122 F.3d 1468, 1471 (Fed.Cir.1997). The meaning of a tariff term, a matter of statutory interpretation, is a question of law. *See Mead,*

185 F.3d at 1306; *Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1366 (Fed. Cir.1998). When there is no genuine dispute over the nature of the merchandise, the classification of the merchandise is a question of law. *Bausch & Lomb,* 148 F.3d at 1366.

■ The proper classification of merchandise is governed by the General Rules of Interpretation (GRI) to the HTSUS. *See Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed.Cir.1998). GRI 1 provides that classification is to be determined according to the terms of the headings and any relevant section or chapter notes. The heading that provides the most specific description is preferred to headings providing a more general description. GRI 3(a), HTSUS. Only after determining whether the product at issue is classifiable under the heading should the court look to the subheadings to find the correct classification. *See Orlando Food,* 140 F.3d at 1440.

■ The trial court first determined that the MFCs for CT systems did not fall within the terms of heading 9022 for parts and accessories which are "solely or principally" for use with x-ray apparatus. 86 F.Supp. at 1299. The court stated that GE "has proffered no evidence to this effect" and that the court did not "locate any evidence in the record addressing this issue." *Id.* However, the court improperly disregarded the supplemental declaration of Joseph Getchel stating "the models of MFCs for CT scanner systems involved in this lawsuit are identifiable as being solely for use as accessories of CT scanners." Merchandise subject to classification "must be evaluated for tariff purposes in its condition as imported." *Rollerblade, Inc. v. United States,* 112 F.3d 481, 487 (Fed.Cir. 1997). As imported, the 97 MFCs for use in CT systems lack the protective shield found on the MFC for use in the MRI system, thereby restricting their use solely to CT systems. Because those MFCs are solely or principally used with CT systems, they are "accessories" to an apparatus based on the use of x-rays.

■ Although an accessory to an apparatus classified under heading 9022, Note 2(a) to HTSUS Chapter 90 further provides that "[p]arts and accessories which are goods included in any of the headings of this chapter ... are in all cases to be classified in their respective headings." Explanatory Note I(A)(3) to heading 9022 provides that separately presented cameras, even if specially designed for use with an x-ray apparatus, are classified in heading 9006 because the camera is a "good" included in a separate heading of Chapter 90. Therefore, to be classifiable under heading 9022 as accessories, MFCs must not be classifiable as "cameras" in heading 9006.

The MFCs presented by GE are combination apparatuses. The camera is only part of a combination, which includes a camera assembly and a functionally separate internal display monitor. Both the display monitor and the camera must independently perform their nonsubordinate functions if the MFC is to operate properly. Although Chapter Note 2(a) requires separately imported cameras, even if accessories of x-ray apparatuses, to be classified under heading 9006, it does not include combination apparatuses in which merely one component is a camera. GRI 3(a) states that the heading that provides the most specific description shall be preferred. A heading that describes the entire apparatus as a single unit is more specific than a heading describing one component of a combination apparatus. Because a MFC is a combination apparatus that is an accessory to an apparatus based on the use of x-rays, heading 9022 provides the most specific description.

Customs argues that the MFCs cannot be classified under 9022 because the device, as imported, does not generate any x-rays. The Explanatory Notes, Customs argues, indicate that the only cameras included in the heading are those imported with an x-ray apparatus. Because neither the monitor nor camera produce x-rays, and MFCs are not presented with an apparatus that produces x-rays, the merchandise cannot be classified under heading 9022. This argument, however, places too much weight on the non-binding Explanatory Notes. *See Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed. Cir.1994) (Although non-binding, courts may refer to Explanatory Notes for guidance in interpreting the HTSUS.). The language of heading 9022 specifically includes "control panels and desks, screens, examination or treatment tables, chairs and the like," that are not capable of generating x-rays. The Explanatory Notes also include accessories to x-ray apparatuses that do not themselves generate x-rays. Therefore, there is no requirement that an accessory to an apparatus based on x-rays must be presented with an apparatus that generates x-rays and the 97 MFCs for use with CT systems are properly classified under subheading 9022.90.60.

■ The MFC for MRI systems is identical to the MFC for CT systems except for the protective shield. However, GE concedes that that MFC cannot be classified in heading 9022, since an MRI scanner is not based on the use of x-rays. Customs argues that because the MFC designed for MRI systems is not solely or principally used with an apparatus under heading 9022, the MFC is properly classified in the residual heading 9033 by appli-

cation of Note 2(c) to Chapter 90. The MFC model in question, however, was designed principally for use with MRI systems. Under Note 2(b) to Chapter 90, parts or accessories suitable for use solely or principally with a particular apparatus are to be classified under the same heading. Heading 9018 provides a classification for "[i]nstruments and appliances used in medical . . . sciences, including . . . other electro-medical apparatus and . . . parts and accessories thereof." Therefore, the remaining MFC dedicated for use in MRI systems is properly classified under subheading 9018.90.80, as "[o]ther instruments and appliances and parts and accessories thereof: other: other." *

### Conclusion

Accordingly, we reverse the judgment of the Court of International Trade.

---

\* In light of our disposition, we need not reach GE's argument that the Court of International Trade committed prejudicial error by failing to amend the pleadings to conform to the evidence under local rule 15(b).