**E.T. HORN COMPANY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**Docket No. 03–1363.**

United States Court of Appeals,
Federal Circuit.

May 12, 2004.

United States ("HTSUS") as an "Other" ether of monohydric alcohol. *E.T. Horn Co. v. United States,* No. 98–11–03124, 2003 WL 649080 (Ct. Int'l Trade Feb. 27, 2003). Because the trial court properly interpreted the HTSUS and found that subheading 2909.19.1090 more specifically covers Horn's imports of DCEE, we affirm.

Heather C. Litman, Stein Shostak Shostak & O'Hara, of Los Angeles, CA, argued for plaintiff-appellant. With her on the brief was Joseph P. Cox.

Saul Davis, Senior Trial Counsel, International Trade Field Office, United States Department of Justice, of New York, NY, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; and David M. Cohen, Director; Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, of New York, NY.

Before GAJARSA, LINN, and PROST, Circuit Judges.

PROST, Circuit Judge.

E.T. Horn Company ("Horn") appeals the judgment of the Court of International Trade affirming the United States Customs Service's ("Customs' ") classification of Horn's imports of dichloroethyl ether ("DCEE") under subheading 2909.19.1090 of the Harmonized Tariff Schedule of the

## BACKGROUND

Horn produces and imports DCEE, which has the chemical formula $Cl–CH_2–CH_2–O–CH_2–CH_2–Cl$. DCEE is an acyclic ether; more particularly, it is a symmetrical acyclic ether because the carbon-containing groups ($Cl–CH_2–CH_2$) attached to the oxygen atom are the same. To produce its DCEE, Horn employs a patented processing formula that does not involve deriving DCEE from diethyl ether or a mono- or polyhydric alcohol, either by dehydration or by any other method.

For a number of years, Horn classified its imports of DCEE under subheading 2909.11.0000, which applies to diethyl ethers. It did so because DCEE is a structural derivative of diethyl ether, and Subheading Note 1 to Chapter 29 of the HTSUS states that:

> Within any one heading of this chapter, *derivatives of a chemical compound (or group of chemical compounds) are to be classified in the same subheading as that compound (or group of compounds)* provided that they are not more specifically covered by any other subheading and that there is no residual subheading named *"Other"* in the series of subheadings concerned.

Subheading Note 1, Section VI, Chapter 29, HTSUS (emphasis on "Other" in original, other emphasis added) ("Note 1").

Because it is a structural derivative of diethyl ether, Horn classified its DCEE as diethyl ether, subject to a one percent tariff rate under subheading 2909.11.0000.

In 1996, the Los Angeles Customs office conducted a laboratory test of Horn's DCEE. The Los Angeles Customs Laboratory concluded that Horn's claimed DCEE was in fact DCEE. Accordingly, the Los Angeles Customs office continued to allow Horn to import the chemical under subheading 2909.11.0000 as a derivative of diethyl ether.

Despite the findings of the Los Angeles Customs Laboratory, the Customs office for the Port of Houston rejected Horn's entries of DCEE under subheading 2909.11.0000 and instead required classification under subheading 2909.19.1090, the provision for ethers of monohydric alcohols other than methyl tertiary-butyl ether ("MTBE"). At that time, the relevant portion of the HTSUS read as follows:

| | | |
|---|---|---|
| 2909 | Ethers, ether-alcohols, ether-phenols, ether-alcohol-phenols, alcohol peroxides, ether peroxides, ketone peroxides (whether or not chemically defined), and their halogenated, sulfonated, nitrated or nitrosated derivatives: | |
| | Acyclic ethers and their halogenated, sulfonated, nitrated or nitrosated derivatives: | |
| 2909.11.00 | Diethyl ether | 1% |
| 2909.19 | Other: | |
| 2909.19.10 | Ethers of monohydric alcohols | 5.6% |
| 2909.19.1010 | Methyl tertiary-butyl ether (MTBE) | |
| 2909.19.1090 | Other | |
| | Ethers of polyhydric alcohols: | |
| 2909.19.3000 | Triethylene glycol dichloride | |
| 2909.19.6000 | Other | |

The Houston Customs office classified Horn's DCEE under subheading 2909.19.1090, subject to a duty rate of 5.6%,[1] because it found that the subheading more specifically covered Horn's imports.

Horn disagreed and filed a Protest and Application for Further Review on January 3, 1997. In response, Customs issued Headquarters Ruling Letter No. 961,207 on April 27, 1998. It concluded that Horn's DCEE should be classified under subheading 2909.19.1090 as an "Other" ether of monohydric alcohol.

Horn appealed to the United States Court of International Trade claiming that DCEE is not an ether of monohydric alcohol because it is not produced from monohydric alcohol and does not contain a monohydric alcohol in its structure. The court found the issue ripe for summary judgment because it depended upon interpretation of the tariff schedule rather than the physical characteristics of the imported merchandise.

Applying the language of Note 1, the Court of International Trade began by addressing the question of whether DCEE is an ether of monohydric alcohol and therefore more specifically provided for under subheading 2909.19.1090. Based on relevant chemical dictionary definitions, the Explanatory Notes to sub-chapter IV under 29.09 ("Explanatory Notes"), and the statutory structure, the court agreed with the government that an ether should be classified according to its structural relationship to a particular alcohol. The Court of International Trade further concluded that the process of dehydration defines

---

1. The duty rate was also 5.5% at another point in the investigation.

that relationship and that the key structural aspect to evaluate is the correspondence of the carbon backbones. Based on its interpretation of the tariff schedule, the court classified Horn's DCEE as an "Other" ether of monohydric alcohol under subheading 2909.19.1090.

Because it found that subheading 2909.19.1090 more specifically provided for DCEE, the Court of International Trade did not address the other Note 1 issues—whether DCEE was covered by a residual "Other" provision or was a derivative of diethyl ether.

Horn timely appealed the Court of International Trade's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### I

"We review the grant of summary judgment by the Court of International Trade de novo." *Pomeroy Collection, Ltd. v. United States*, 336 F.3d 1370, 1371 (Fed. Cir.2003). Here, summary judgment is appropriate because there are no genuine issues of material fact regarding the nature of the imported DCEE. *See Gen. Elec. Co. v. United States*, 247 F.3d 1231, 1234 (Fed.Cir.2001). Instead, the outcome depends on the interpretation of the HTSUS, which we determine de novo. *See id.*

▪▪▪ "The proper classification of merchandise is governed by the General Rules of Interpretation (GRI) to the HTSUS." *Id.* at 1235. GRI 1 states that a product's classification is determined by first looking to the headings and section or chapter notes. *Orlando Food Corp. v.*

*United States*, 140 F.3d 1437, 1440 (Fed. Cir.1998). "Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." *Id.* Absent contrary definitions in the HTSUS or legislative history, we construe HTSUS terms according to their common and commercial meanings. *Medline Indus. Inc. v. United States*, 62 F.3d 1407 (Fed.Cir.1995); *see also Len–Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed.Cir.2003). Furthermore, we may rely upon our own understanding of a term as well as lexicographic and scientific authorities. *Len–Ron*, 334 F.3d at 1309. Finally, we refer to the Explanatory Notes accompanying a tariff subheading, which—although not controlling—provide interpretive guidance. *Id.*

### II

On appeal, Horn argues that, under Note 1, its DCEE must be classified under subheading 2909.11.0000. Although it concedes that its DCEE does not specifically belong under subheading 2909.11.0000 because it is not diethyl ether, Horn contends that neither of the Note 1 exceptions applies; thus, its DCEE should be classified as a derivative of diethyl ether. First, Horn argues that its DCEE is not more specifically provided for under subheading 2909.19 because it is not an ether "of"—meaning "made from"—either mono- or polyhydric alcohol. Alternatively, Horn believes that if subheading 2909.19 covers structural derivatives, its DCEE is not specifically covered under subheading 2909.19 because it lacks a shared carbon-oxygen backbone with any mono- or polyhydric alcohols. Finally, Horn argues, there is no residual "Other" provision in the same series of subheadings—no goods

may be classified in the six-digit subheading 2909.19 "Other" provision. Thus, because neither of the Note 1 exceptions applies, Horn concludes that its DCEE should be classified as a derivative of diethyl ether.

The government counters that the Court of International Trade properly classified Horn's DCEE imports under subheading 2909.19.1090. The government agrees with Horn that, under Note 1, subheading 2909.11.0000 does not specifically provide for Horn's DCEE. The agreement ends there, however, because the government believes that subheading 2909.19 both more specifically provides for DCEE and also serves as a residual "Other" provision. In either case, the government contends, Note 1 requires classification under 2909.19, specifically 2909.19.1090. Accordingly, the government concludes that Horn's DCEE should not be classified as a derivative of diethyl ether.

### III

We begin, as did the Court of International Trade, by determining the meaning of Note 1, quoted above. Note 1 guides the classification process by stating that Customs should classify derivatives of a chemical compound in the same subheading as the compound unless (1) they are not more specifically covered by another subheading, *or* (2) there is no residual subheading named "Other" in the relevant series of subheadings. In this case, the parties do not contest that DCEE is an ether, covered by HTSUS 2909. The parties further agree that DCEE is an acyclic ether, covered by either subheading 2909.11 or subheading 2909.19. Finally, they agree that DCEE is not itself diethyl ether, which would be specifically covered by subheading 2909.11.0000. Applying the

Note 1 classification process to the facts at issue, we must therefore determine whether Horn's DCEE is (1) more specifically covered under subheading 2909.19; (2) if not, whether there is a residual "Other" subheading in the series of subheadings that would cover Horn's DCEE; and finally (3) if not, whether Horn's DCEE is a "derivative" of diethyl ether such that it should be classified under subheading 2909.11.0000.

In order to answer the first Note 1 question—whether DCEE is more specifically covered under subheading 2909.19.1090—we divide the analysis into two parts. First, we will address the parties' arguments regarding the overall organization of the subheadings covering acyclic ethers to determine whether the six-digit subheading 2909.19 potentially covers Horn's imports of DCEE. As a legal matter, therefore, we must determine if subheading 2909.19 requires classification of ethers according to their structure or their method of manufacture. Second, if subheading 2909.19 requires classification of ethers according to their structure, we will further evaluate whether any of the more specific eight-digit subcategories—subheading 2909.19.10, 2909.19.30, or 2909.19.60—particularly classifies Horn's DCEE. As to this latter question, we must determine the particular type of chemical structural relationships to evaluate.

### A

With respect to the first question—the structure of the relevant tariff provisions—Horn contends that subheading 2909.19 requires classification according to method of manufacture. Horn argues that its DCEE is not an "ether *of* monohydric alcohol" because it is not "made from" monohydric alcohol. Citing the declara-

tion of the government's expert witness Dr. James Canary, Horn notes that the word "derivative" can mean either (1) that a compound was directly produced from another compound or (2) that it has a chemical formula that is structurally related to that of another compound. Based on the headings and Note 1, Horn argues in favor of adopting the broader, "structurally related" definition of "derivative." The problem, according to Horn, is that the Court of International Trade also used this definition to classify its DCEE as an "ether of monohydric alcohol." Specifically, it contends that the use of the word "of" for subheadings under 2909.19.10 limits its classification to ethers "made from" monohydric alcohol; it believes that "of" does not encompass all structurally related compounds but is limited to those actually produced from monohydric alcohols. The plain meaning of the term "of," argues Horn, requires such a construction, in accordance with general principles of statutory construction. In addition, Horn focuses on the tariff schedule's use of disparate language—the use of the word "of" in the various subheadings under 2909.19 as distinguished from the use of the word "derivative" in the heading for HTSUS 2909 and in Note 1—to emphasize that Congress intended a difference in meaning. Finally, Horn cites a variety of cases to support its construction of the term "of." [2]

In response, the government argues in favor of classifying all ethers according to their structure. In so doing, the government focuses on the organization of the tariff provisions to argue that "of" encompasses the broader definition of "derivative," which covers structural relationships. As the government points out, the parties agree that DCEE belongs under the heading "Acyclic Ethers." Moreover, the government notes, this heading itself contains two subheadings—subheading 2909.11 for "diethyl ether" and subheading 2909.19 for "Other." Consequently, according to the government, the "Other" provision must encompass *all* acyclic ethers—including their structural derivatives—other than diethyl ether.

■ Based on the language and organization of the tariff provisions, we agree with the government's interpretation and hold that the HTSUS requires classification of compounds under subheading 2909.19 according to structure. We base our conclusion on the plain meaning and overall organization of the tariff schedule headings and subheadings, as well as the Explanatory Notes to the tariff schedule and various dictionary definitions of "ether."

In accordance with GRI 1, discussed above, we first focus on the language of the applicable heading. Heading 2909 covers "Ethers, ether-alcohols, ether-phenols, ether-alcohol-phenols, alcohol peroxides, ether peroxides, ketone peroxides (whether or not chemically defined), and their halogenated, sulfonated, nitrated or nitrosated derivatives." As the plain terms of the heading suggest, HTSUS 2909 covers *all* ethers, including their various derivatives. Notably, the heading does not distinguish ethers based on their method of manufacture. The parties agree that DCEE is an ether and that it should therefore be classified under heading 2909.

**2.** In particular, Horn cites *In re Pickhardt & Kuttroff*, T.D. 20728, 1 Treas. Dec. 373 (1897); *Kuttroff, Pickhardt & Co. v. United States*, 21 C.C.P.A. 332 (1934); *Ashland Chem. Co. v. United States*, 7 CIT 362 (1984); and *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481 (Fed.Cir.1997).

Also in accordance with the applicable law, we next evaluate the relevant subheadings. The next classification sub-level covers "Acyclic ethers and their halogenated, sulfonated, nitrated or nitrosated derivatives." The parties also agree that Horn's DCEE is an acyclic ether that belongs under this subheading. In addition, this subheading also does not distinguish ethers based on their manner of production.

The coordinate six-digit level contains only two subheadings—subheading 2909.11 for "Diethyl ether" and subheading 2909.19 for "Other." This "Other" category must therefore encompass all acyclic ethers other than diethyl ether. This includes their various derivatives because both superior headings specifically covered derivatives. And "derivatives," as Horn itself argues, should be given its broad, "structurally related" meaning. Thus, the language of the subheadings suggests that subheading 2909.19 covers ethers according to their structure and not their manner of production.

In addition to the language of the headings and subheadings, our conclusion rests in large part on the preservation of symmetry in these tariff provisions. We agree with the government that Horn's proposed interpretation inconsistently reads "diethyl ether" as encompassing structurally related derivatives, but reads "ethers of monohydric alcohol" more narrowly to require that they be "made from" monohydric alcohol. We also agree with the government's observation that Horn's interpretation would create an anomaly by yielding no classification for those acyclic ethers that are neither "made from" the listed alcohol groups nor "derivatives" of diethyl ether, despite the fact that the subheading clearly intends to cover *all* acyclic ethers.

Finally, we note that Horn's proposed classification system would permit the classification of identical ethers in different classes, with different duty rates, based on different methods of production. This interpretation, however, conflicts with the plain language of the tariff provisions applicable to ethers. Because the subheadings under 2909.19 are *eo nomine* provisions—provisions that describe goods by specific names known to commerce—they include all forms of the article. *See Chevron Chem. Co. v. United States,* 59 F.Supp.2d 1361, 1367 (Ct. Int'l Trade 1999). Without clear language directing classification based on differences in production methods, we conclude Customs properly refused to interpret the tariff provisions in the asymmetric manner Horn suggests.

The Explanatory Notes and dictionary definitions, as the Court of International Trade reasoned, also support classifying ethers by their structure rather than their method of manufacture. In particular, the Explanatory Notes state that ethers "have the general formula: (R–O–R1) where R and R1 may be the same or different." The fact that ethers have a "general formula" supports the conclusion that ethers are defined by their structure, not their manner of production. Dictionary definitions similarly define ethers by their structure. One dictionary defines ethers as "[o]ne of a class of organic compounds characterized by the structural feature of an oxygen linking two hydrocarbon groups (such as R–O–R)." *McGraw–Hill Dictionary of Scientific and Technical Terms* 745 (6th ed.2003). Another provides the following definition: "[a] class of organic compounds in which an oxygen atom is interposed between two carbon atoms (organic groups) in the molecular structure, given the generic formula ROR." *Hawley's*

*Condensed Chemical Dictionary* 453 (14th ed.2001). These definitions support the conclusion that ethers are commonly defined by their structure rather than the method of manufacture. They thereby confirm our holding that the tariff schedule requires classification of ethers according to their structure.

The cases cited in support of Horn's arguments are inapposite. On the whole, the cases Horn cites address tariff provisions wholly unlike those at issue here. In addition, none of these cases evinces the restrictive interpretation of the term "of" espoused by Horn. Finally, as the government explains, these cases demonstrate that Congress has for years used more particular language to limit the classification of chemicals by source. In particular, it has consistently employed more instructive phrases such as "derived from," "produced from," or "manufactured from." Lacking such language here, we do not construe the tariff provisions in the limited manner that Horn seeks.

■ Based on the plain language and organization of the tariff provisions as well as the Explanatory Notes and relevant dictionary definitions, we conclude that subheading 2909.19 generally seeks the classification of ethers and their derivatives based upon their structure, not their method or manufacture. Thus, we reject Horn's arguments that the use of the term "of" in 2909.19 means that an ether must be "made from" a particular alcohol, which would mean that Horn's DCEE could not be classified under subheading 2909.19.

## B

In light of our findings, we next turn to Horn's alternative arguments regarding the appropriate structural similarity to evaluate. In this regard, Horn asserts that the Court of International Trade misinterpreted the Explanatory Notes as well as the scientific publications. With respect to the Explanatory Notes, Horn argues that they point away from classifying ethers as dehydrated alcohols or phenols. Because the Explanatory Notes state that ethers "may" be described as such, Horn contends, they also indicate that they may be described in other ways. Citing *Ullman's Industrial Organic Chemicals,* Horn demonstrates that there are four different categories of methods for synthesizing ethers. "Thus," Horn concludes,

> while 'ethers' can be described by a general formula, the [Court of International Trade] has failed to demonstrate a nexus between this fact and its holding that ethers classifiable under Heading 2909, HTSUS, *must* be described in relation to the alcohols to which they are structurally related by dehydration.

Appellant's Brief at 27 (emphasis in original).

As opposed to evaluating the structural relationship between ethers and alcohols by the method of dehydration (which looks to similarities in the carbon backbone), Horn suggests evaluating similarities between the carbon-oxygen backbone. In support of this argument, Horn cites the affidavit of its expert, Dr. Wills. Dr. Wills disagrees with using simply the oxygen backbone because it "casts the net too wide." Wills' Aff., para. 8. Using its standard, Horn further argues, 2-chloroethanol, a monohydric alcohol, is not structurally related to DCEE; they do not share a common carbon-oxygen backbone. Horn notes, however, that its DCEE is structurally related to diethyl ether using this standard. Consequently, Horn believes that, according to Note 1, its DCEE

should be classified as diethyl ether under subheading 2909.11.0000 as a structural derivative thereof.

The government counters that the Court of International Trade correctly held that subheading 2909.19 intended to distinguish ethers based on their chemical structural similarity to alcohols. First, the government notes, the residual subheadings covering acyclic ethers are themselves subdivided according to alcohol type— 2909.19.10 for ethers of monohydric alcohols and 2909.19.30 and 2909.19.60 for ethers of polyhydric alcohols. Second, according to the government, the Explanatory Notes elucidate the proper classification method because they define ethers according to their relationship to alcohols by the method of dehydration. Using this methodology, the government observes, Horn's DCEE is structurally related to 2–chloroethanol, a monohydric alcohol. Finally, the Explanatory Notes and the relevant scientific dictionaries further support the conclusion that ethers can be formulaically defined by having a common carbon backbone with such alcohols.

Based on the structure of the subheadings under 2909.19, and more particularly on the Explanatory Notes and relevant dictionary definitions, we conclude, as did the Court of International Trade, that ethers should be classified according to their structural relationship to alcohols by the method of dehydration. First, the organization of the subheadings demonstrates that it is the relationship of an ether and a corresponding alcohol that is the important relationship. Under subheading 2909.19, the tariff schedule contains residual subheadings that are subdivided according to types of alcohols. Subheading 2909.19.10 covers "ethers of monohydric alcohols"; subheadings 2909.19.30 and 2909.19.60 cover "ethers of polyhydric alcohols." Accordingly, we conclude that ethers must be defined according to their relationship to their corresponding alcohols.

The Explanatory Notes support our conclusion, and further demonstrate that the method of dehydration defines the relationship between ethers and alcohols under subheading 2909.19. In relevant part, the Explanatory Notes state that

> Ethers may be considered as alcohols or phenols in which the hydrogen atom of the hydroxyl group is replaced by a hydrocarbon radical (alkyl or aryl). They have the general formula: (R–O–R1) where R and R1 may be the same or different.

In common terms, the first sentence refers to ethers as dehydrated alcohols or phenols; replacing the hydrogen atom of an alcohol or phenol with a hydrocarbon radical involves the removal of water ($H_2O$). Thus, Explanatory Note 1 suggests that ethers should be classified according to their respective alcohols and, more specifically, that it is the method of dehydration that defines that relationship.

The dictionary definitions lend further support because they also define ethers according to their respective alcohols by the method of dehydration.

> Chemically, ethers are compounds of neutral character derived from alcohols by elimination of water (one molecule of water from two molecules of alcohol). A better general characterization is that an ether is an organic compound in which an oxygen atom is interposed between two carbon atoms in the molecular structure.

*The Condensed Chemical Dictionary* 381 (7th ed.1966). Although Horn contests the

use of this dictionary because the definition predates new processes for producing ethers, a more recent dictionary similarly states that "[e]thers are generally prepared by catalytic dehydration of alcohols or by reaction of alkyl halides with alkoxides." *Ullman's: Starting Materials and Intermediates* 2188 (1999). Thus, the dictionary definitions also define ethers according to their respective alcohols by the method of dehydration. Because both the Explanatory Notes and the dictionary definitions define ethers according to their respective alcohols by the method of dehydration, we conclude that subheading 2909.19 requires that ethers be classified in this manner.

Further, because subheading 2909.19 requires the classification of ethers according to their respective alcohols by the method of dehydration, the particular structural similarity to evaluate is the carbon backbone. The Explanatory Notes support comparing the carbon backbones of ethers and alcohols. They list DCEE as an example of a symmetrical acyclic ether, alongside diethyl ether, di-isopropyl ether, dibutyl ether, and dipentyl ether. As the government notes, the only similarity between these five acyclic ethers is their carbon relationship with water and alcohols. As such, the listing of similarity, acyclic ethers supports evaluating the carbon backbone when classifying ethers according to their respective alcohols.

We therefore reject Horn's arguments in favor of evaluating the carbon-oxygen backbone. These arguments conflict with the weight of the objective scientific evidence; the dictionary definitions clearly focus on the carbon backbone as the defining feature of an ether. In addition, Horn's arguments contradict the listing provided in the Explanatory Notes. Under Horn's methodology, di-isopropyl ether, diethyl ether, and dipentyl ether, which are listed as examples of symmetrical acyclic ethers, would not be classifiable as such; because they do not possess the same carbon-oxygen backbone as their related alcohols, they would not be classifiable as symmetrical acyclic ethers. Accordingly, the Court of International Trade properly refused to credit Dr. Wills' testimony contradicting the weight of the objective evidence.

IV

Having found that, as a legal matter, subheading 2909.19 seeks the classification of ethers according to their structure and not by method of manufacture, and further that the relevant structural relationship to evaluate is that of an ether to its respective alcohol by the process of dehydration, we now focus on the facts of this case. Particularly, we begin by answering the first of our Note 1 questions: whether Horn's DCEE is more specifically provided for under subheading 2909.19.1090.

DCEE is structurally related to 2–chloroethanol by the method of dehydration. As mentioned, dehydration means that a water molecule has been removed from the alcohol. As a chemical formula, DCEE is related to 2–chloroethanol as such: $Cl-CH_2-CH_2-OH + HO-CH_2-CH_2-Cl \rightarrow Cl-CH_2-CH_2-O-CH_2-CH_2-Cl + H_2O$. Thus, DCEE is related to 2–chloroethanol, a monohydric alcohol, by the method of dehydration; the formula represents the removal of water ($H_2O$) from the alcohol 2–chloroethanol. In addition, DCEE is characterized by the formula $R-O-R$, where R represents $Cl-CH_2-CH_2$.

Accordingly, the Court of International Trade properly classified DCEE as an

"Other" ether of monohydric alcohol" under subheading 2909.19.1090. First, DCEE is structurally related to 2–chloroethanol by the method of dehydration. Second, 2–chloroethanol is a monohydric alcohol—it contains a single OH group. Third, it is not MTBE. Thus, Horn's DCEE is classifiable under subheading 2909.19.1090. An evaluation of the carbon backbone confirms this result. $Cl–CH_2–CH_2$ is the same carbon backbone structure found in both DCEE and the monohydric alcohol 2–chloroethanol. Again, using this formulaic evaluation, the court properly found that DCEE was structurally related to 2–chloroethanol, which further means that DCEE should be classified as an "Other" ether of monohydric alcohol under subheading 2909.19.1090.

Because we conclude that Horn's DCEE is an "Other" ether of monohydric alcohol and therefore more specifically provided for under subheading 2909.19.1090, we do not reach the other Note 1 issues of whether there is a residual "Other" provision or whether Horn's DCEE is a derivative of diethyl ether. Notably, we reject Horn's contention that the Court of International Trade failed in its Note 1 analysis because it did not first construe the meaning of the term "residual other." As a procedural matter, the court did not have to construe the term because any such construction would have been moot; because DCEE is more specifically provided for under subheading 2909.19.1090, the construction of "residual other" is irrelevant.

We have considered all of the remaining arguments properly presented to us by Horn and find them unpersuasive and lacking in merit.

## CONCLUSION

Based on our analysis of the HTSUS, we hold that it seeks the classification of ethers according to their structure, in particular their structural relationship to their respective alcohols by the method of dehydration. As such, we conclude that Horn's DCEE should be classified under subheading 2909.19.1090.

## COSTS

No costs.

*AFFIRMED.*