Opinion for the court filed by Circuit Judge NEWMAN.
PAULINE NEWMAN, Circuit Judge.
In this tariff classification case, both the importer BASF Corporation and the government appeal the decision of the United States Court of International Trade, holding that the imported product, brand name Lucarotin ® 1 %, which contains 1 % beta-carotene and is used as a food colorant, is classified under subheading 3204.19.35 (“Beta-carotene and other carotene coloring matter”) of the Harmonized Tariff Schedule of the United States (“HTSUS”).[1] BASF argues that the product is entitled to duty-free treatment because beta-carotene is listed on the duty-free Pharmaceutical Appendix of the HTSUS. The Customs Service had initially classified and liquidated Lucarotin ® 1 % under subheading 2106.90.99 (“Food preparations not elsewhere specified or included: Other”), but at trial and on this appeal the government proposes that 3204.19.40 (“Other”) or 3204.19.50 (“Other”) is the correct classification.
I
The methodology of tariff classification is established by the HTSUS, which consists of the General Notes, the General Rules of Interpretation (GRI), and the Additional United States Rules of Interpretation (U.S.GRI), including all section and chapter notes and article provisions and *1326 the Chemical Appendix. The rules are applied in numerical order. See North American Processing Co. v. United States, 236 F.3d 695, 698 (Fed.Cir.2001); Baxter Healthcare Corp. of Puerto Rico v. United States, 182 F.3d 1333, 1337 (Fed.Cir.1999).
The HTSUS is a hierarchical classification system which requires application of the most specific descriptive category in determining the applicable duty. See General Elec. Co.-Medical Systems Group v. United States, 247 F.3d 1231, 1235 (Fed.Cir.2001) (the proper classification of merchandise according to the HTSUS requires looking to the most specific description and is preferred to headings of a more general description); Marubeni America Corp. v. United States, 35 F.3d 530, 536 (Fed.Cir.1994) (“under the General Rules of Interpretation (GRI) when an article satisfies the requirement of two provisions, it will be classified under the heading giving a more specific description”). When the name of the product and its use are included in an eo nomine[2] description, that specific classification prevails over a more general classification of either name or use.
BASF states that the Court of International Trade erred in denying duty-free treatment, because beta-carotene is a pro-vitamin and is listed on the Pharmaceutical Appendix. BASF argues that the purpose of the international agreement concerning duty-free movement of pharmaceuticals is to facilitate and encourage trade in such products, and therefore that they should be interpreted to include items such as Lucarotin ® 1%. BASF points out that beta-carotene is the only active component of Lucarotin ® 1% and argues that it is irrelevant, for tariff purposes, whether the beta-carotene is intended for pharmaceutical use or for some other purpose, stressing the listing of beta-carotene in the Pharmaceutical Appendix. BASF states that the court improperly incorporated an actual use requirement into the Pharmaceutical Appendix.
It is not disputed that the only active ingredient of Lucarotin ® 1% is its content of beta-carotene. Nor is it disputed that this product is not intended for vitamin or other pharmaceutical use, but is intended for use as a food colorant. The beta-carotene provides a strong red-orange color, and the other ingredients are diluents, stabilizers, and dispersants. BASF’s Technical Bulletin describes Lu-carotin ® 1% as a food colorant containing “stabilized beta-carotene dispersed in soybean oil and embedded as minute droplets in a polysaccharide sugar matrix.” The Court of International Trade applied the International Trade Commission’s definition of a pharmaceutical product as “used in the prevention, diagnosis, alleviation, treatment, or cure of disease in humans or animals,” Advice Concerning the Addition of Certain Pharmaceutical Products and Chemical Intermediates to the Pharmaceutical Appendix to the Harmonized Tariff Schedule of the United States, USITC Pub. 3167, at 3 (April 1999), and found, without dispute, that “[c]ustomers do not buy Lucarotin ® 1% for any purpose other than delivery of a beta-carotene colorant.” Thus the court held that Lucarotin ® 1% 'is not eligible for duty-free importation despite the listing of beta-carotene on the Pharmaceutical Appendix.
When a product is specifically described or named (eo nomine) in the HTSUS, the specific classification prevails over any more general listing that also includes the imported product, as set forth in Rule 3 of the General Rules of Interpretation:
*1327 GRI 3(a). The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.
(b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or the component which gives them their essential character, insofar as this criterion is applicable. [Emphases added.]
The Court of International Trade found that “[b]eta-carotene imparts the essential character to Lucarotin ® 1%,” and placed Lucarotin ® 1% within subheading 3204.19.35 for “Beta-carotene and other carotenoid coloring matter,” citing Explanatory Note (I)(A) to Subheading 32.04, allowing for diluents. We agree that for the Lucarotin ® 1 % formulation of beta-carotene as a food colorant, the eo nomine and specificity rules establish the tariff classification. The “most specific description” criterion of GRI 3(a) and/or the “essential character” criterion of GRI 3(b) so require, whether one views the Lucarotin ® product as a mixture, emulsion, formulation, composition, or preparation. The decision of the Court of International Trade represents the clearest and most direct application of the HTSUS provision of a separate tariff category for beta-carotene coloring matter. We affirm that this classification prevails over the listing of beta-carotene on -the Pharmaceutical Appendix.[3] BASF’s appeal is denied.
II
On cross-appeal the government states that the correct classification of Lucarotino ® 1% is as a beta-carotene “preparation not otherwise specified” under heading 3204.19.40 or 3204.19.50. The government argues that although the 1 % of beta-carotene provides the coloring matter, the other 99% renders the beta-carotene soluble and dispersible in foods and beverages. Thus the government argues that Lucaro-tin ® 1 % is a “preparation” and should be so classified, whether or not there is a classification specific to use as a colorant.
The Court of International Trade determined that it need not decide whether Lucarotin ® 1% is a “preparation,” because the classification of beta-carotene coloring matter, subheading 3204.19.35, necessarily takes precedence under the General Rules of Interpretation. Subheading 3204.19.35 plainly is the more specific of the potential classifications. Lu-carotin ® 1% does not involve a chemical reaction or series of steps, as in Lynteq, Inc. v. United States, 976 F.2d 693 (Fed. Cir.1992) (classifying Cromophyl-L as a preparation derived from marigold meal, but not as marigold meal itself). The beta-carotene is the active ingredient of the imported product, and the ingredient that imparts the color. Even if Lucarotin ® 1% were viewed as a “preparation,” when a product may be described by both its use and its name, the use is a “convenient rule of thumb” for weighing compet *1328 ing considerations. See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1313 (Fed.Cir.2003) (the “rule of relative specificity” looks to “the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty” (citations omitted)). Thus when there is a specific tariff classification naming the product and a specific use of a product that has other uses, that classification prevails over any more general designation such as a nonspecific “preparation.” See, e.g., Totes, Inc. v. United States, 69 F.3d 495, 500 (Fed.Cir.1995) (classifying the imported goods under the more specific description and not the more general description, in accord with the greater specificity rule).
The Court of International Trade found, without error, that “[b]eta-earotene imparts the essential character to Lucarotin 1%” in its use as a food colorant, and correctly classified it under HTSUS 3204.19.35. The government’s appeal is denied.

AFFIRMED

. BASF Corp. v. United States, 391 F.Supp.2d 1246 (CIT June 13, 2005).

. An eo nomine classification describes a product by a specific name. See Nidec Corp. v. United States, 68 F.3d 1333, 1336 (Fed.Cir.1995).

. We note the concern of the amici curiae that if this formulation is denied access to the Pharmaceutical Appendix, other beta-carotene products may be wrongly classified. That concern is unfounded, for Lucarotin ® 1% is unambiguously not imported as a vitamin product.