MERCK & CO. (INC.) *v.* UNITED STATES (No. 3390)[1]

---

[1] T. D. 44852.

United States Court of Customs and Patent Appeals, April 22, 1931

*Lamb & Lerch (Kenneth G. Osborn* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell,* special attorney, of counsel), for the United States.

[Oral-argument April 3, 1931, by Mr. Lerch and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This case involves five protests filed at the port of Philadelphia against assessments of duty made upon certain importations of sugar of milk made by appellant under the Tariff Act of 1922. The classification in each case was under the provision for "other saccharides" in paragraph 504 of said act. The protests severally claimed the goods to be dutiable under paragraph 5 of said act as "chemical compounds." The United States Customs Court overruled the protests, and the importer has appealed.

The paragraphs involved are as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

PAR. 504. Adonite, arabinose, dulcite, galactose, inosite, inulin, levulose, mannite, d-talose, d-tagatose, ribose, melibiose, dextrose testing above 99.7 per centum, mannose, melezitose, raffinose, rhamnose, salicin, sorbite, xylose, and other saccharides, 50 per centum ad valorem.

The appellant claims here that the rule of *ejusdem generis* should be applied and that, if applied, the articles of importation can not properly be classified under said paragraph 504. It contends and argues that the various products named in said paragraph 504 are rare saccharides, with the exception of salicin, and are used primarily for bacteriological testing and medical diagnosis and are not used industrially. On the other hand, it contends that sugar of milk is a product used on a very large scale industrially and commercially, is sold in vast quantities to be used as a component in infants' food, can be made at an expense of from 23 cents to 24 cents per pound, and that it is not in the same class as the saccharides named in said paragraph

504. It is stated by appellant that sugar of milk is a saccharide but, as has been said, not of the same class as the others specifically named. It is also agreed by all parties that sugar of milk is a chemical compound.

In addition to this, the appellant argues that the legislative history of the Tariff Act of 1922 and of the particular paragraphs here involved indicates that the Congress intended sugar of milk to be classified under said paragraph 5 and not under said paragraph 504.

The Government takes issue with these various propositions and insists that the rule of *ejusdem generis* should not apply, and that, inasmuch as said paragraph 504 specifically provides for "other saccharides," this is, in effect, an *eo nomine* designation of the product here involved which carries it into said paragraph. As to the legislative history the Government counsel argue that this history indicates that the converse of appellant's claims is apparent from said proceedings.

The rule of *ejusdem generis* is one of construction, and we have said that it can be invoked only whenever a doubt arises as to whether a given article, not specifically named, is to be placed in a class of which some of the individual subjects are named. *United States* v. *Lilly & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970. However, in proper cases this court has never hesitated to apply the rule unless it was apparent that the legislative intent was otherwise. *United States* v. *Kirkwood Co.*, 15 Ct. Cust. Appls. 32, T. D. 42136; *United States* v. *Kelley Hardware Co.*, 12 Ct. Cust. Appls. 204, T. D. 40182; *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886; *United States* v. *Kahn & Co.*, 13 Ct. Cust. Appls. 57, T. D. 40881; *Overton & Co.* v. *United States*, 2 Ct. Cust. Appls. 422, T. D. 32172; *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T. D. 31941.

That there is doubt as to the real congressional intent in the enactment of said paragraph 504 is quite apparent. Counsel for both parties have quoted at length from the reports of the United States Tariff Commission, which were furnished to the committees of the House and Senate while H. R. 7456, which afterwards became the Tariff Act of 1922, was under consideration. In addition to this, the court below has gone into that matter at length, drawing its conclusions as to the effect of the various matters submitted and the construction to be deduced therefrom. In this view of the matter some consideration should be given to the legislative history of the provisions in question.

Under the tariff acts of March 3, 1883, and October 3, 1913, sugar of milk was specifically mentioned and on the free list. Under the tariff acts of October 1, 1890, August 27, 1894, July 24, 1897, and August 5, 1909, sugar of milk was on the dutiable list. In each of these statutes by which it was classified as dutiable it was specifically

named. Thus, for the first time in almost 40 years, sugar of milk was not specifically named in the Tariff Act of 1922.

The various substances named in paragraph 504, except salicin, appear for the first time in the Tariff Act of 1922. They are, as is shown by the testimony offered in the court below, rare saccharides, with the exception of inulin, which is a variety of starch, and salicin, which is a glucoside. As shown by Webster's New International Dictionary, 1930, adonite is a crystalline pentahydric alcohol occurring in *Adonis vernalis*. Arabinose is a sugar of the pentose class, most generally obtained from cherry gum. Dulcite is a sweet white crystalline substance, occurring in various plants, and obtained from a manna from Madagascar, and is a hexahydric alcohol. Inulin is a substance resembling starch and is a polysaccharide. Salicin is a bitter white crystalline glucoside found in the bark and leaves of several species of willow and poplar. These examples are typical of the derivation and general character of the rest of the substances named in said paragraph.

The Summary of Tariff Information, 1921, furnished for the use of the Senate Committee on Finance in the consideration of H. R. 7456, pages 607, 608, gave the following description of the various products named in said paragraph 504:

*Description and uses.*—The items enumerated in paragraph 505 are for the most part substances belonging to a class of carbohydrates chemically known as sugars. They are not, however, used as foods nor do they have an industrial or economic relationship to commercial sugar. They are in fact highly refined chemicals, used primarily for bacteriological testing and medicinal diagnosis.

Two of the substances included in the list in paragraph 505 are not sugars at all; inulin is a variety of starch, and salicin is a glucoside.

*Production.*—These substances are extracted from various vegetable materials on a small laboratory scale and are commonly sold in bottles containing a fraction of an ounce. Before the war they were not produced for sale at all in the United States, but since the outbreak of the European war two American firms have undertaken the manufacture of some of them. The annual demand for these rare sugars is very small, probably not more than a few hundred pounds a year for any one of them, with the possible exception of salicin.

On the other hand, sugar of milk is shown by the testimony to be a very considerable subject of commerce and is produced and marketed in very large quantities in the United States. Many thousands of pounds of it are used in manufactured food specialties, particularly infant food. Witness Wall testified, on the hearing below, that during the year previous to his testimony his firm had sold 12,000 pounds of this substance. Sugar of milk, according to the testimony, can be manufactured and is sold for a small price, while the various substances specifically named in paragraph 504 are rare and expensive. The grouping of sugar of milk and the various substances named in said paragraph 504 does not appear in the absence of anything to the contrary, to be a reasonable or rational grouping.

When H. R. 7456 passed the House of Representatives, paragraph 504 was numbered as paragraph 505 and read as follows:

PAR. 505. Adonite, arabinose, dulcite, galactose, inosite, inulin, levulose, mannite, d-talose, d-tagatose, ribose, melibiose, dextrose testing above 99.7 per centum, mannose, melitzitose, raffinose, rhamnose, salicin, sorbite, xylose, and other of the higher saccharides required for scientific purposes, 50 per centum ad valorem.

When the bill was reported to the Senate and referred to the Committee on Finance the Senate and that committee had before it the Summary of Tariff Information of 1921, prepared by the United States Tariff Commission and heretofore referred to. Pages 607 to 609 are devoted to the present paragraph 504. In this report the Tariff Commission made the following suggestions:

*Suggested changes.*—Paragraph 505, page 82, line 20: Strike out the word "melitzitose" and insert "melezitose" to correct a misspelling. It is suggested that these names be rearranged in alphabetical order for convenience in reference.

Paragraph 505, page 82, lines 21 and 22: The phrase "and other of the higher saccharides required for scientific purposes" is objectionable for several reasons. In the first place, the word "higher" would exclude some of the simpler saccharides known as "monosaccharides," which logically belong herein and which it is probably intended to include herein; and in the second place, the phrase "for scientific purposes" would require the customs authorities to determine the use for which the import is intended which always gives difficulty in administration; and thirdly, and most important, this provision is probably too broad because it might be held to include maltose or malt sugar and lactose or milk sugar, which are not elsewhere more specifically provided for. Lactose or milk sugar was specifically provided for on the free list in the act of 1913 (par. 547), but was omitted from the present bill with the intention of throwing it into the basket clause in paragraph 5, dutiable at 25 per cent. In the absence of this provision in paragraph 505, malt sugar would probably also be dutiable under paragraph 5 at 25 per cent. Neither malt sugar nor milk sugar are, from an industrial point of view, in the same class with these rare sugars referred to in paragraph 505 and should not be classified with them. If specific mention for lactose or milk sugar and maltose or malt sugar is made elsewhere, then it is suggested that in lines 16 and 17 the phrase "and other of the higher saccharides required for scientific purposes" should be stricken out and there should be inserted the phrase "and other saccharides not specially provided for."

It is further suggested that the whole of paragraph 505 should be transferred to schedule 1 and inserted between paragraphs 81 and 82. Although the products provided for in paragraph 505 are chemically sugars, they are not used for food or confectionery and have no industrial or economic relationship to commercial sugar, but are highly refined chemicals used primarily for bacteriological testing and medicinal diagnosis and logically belong in schedule 1 with other chemicals and drugs.

With this information before it the Senate Finance Committee amended the paragraph in question and thus reported it to the Senate, where it was afterwards passed in the condition as amended, bearing, however, its present paragraph number. It will be observed that the Senate Finance Committee corrected the misspelling in the word "melezitose" and struck out the words "of the higher saccharides

required for scientific purposes," leaving the language simply "and other saccharides."

The lower court, in commenting upon this circumstance, concluded that inasmuch as the Senate Committee did not, in all respects, follow the suggestions of the United States Tariff Commission, it should be inferred that it was the intention of the Senate Finance Committee and of the Congress to relegate sugar of milk to said paragraph 504.

We are unable to concur with the lower court in this view of the matter. The Tariff Commission had directed the attention of the Congress to the fact that it was not desirable to include sugar of milk within the classification of the rare substances collected and named in said paragraph 504 and that it was the intent of the House of Representatives, in omitting the specific enumeration of sugar of milk from H. R. 7456, to relegate it to classification under paragraph 5 of said act, where it would bear the rate of duty imposed by said paragraph, namely, 25 per centum ad valorem. This, considering the food properties of said article and the cheapness of its production, would make a rate of duty reasonably commensurate therewith.

Our attention has been called to the fact by counsel for the importer that, when H. R. 7456 was being considered by the Ways and Means Committee of the House of Representatives, Mr. C. M. Kline, one of the largest producers of sugar of milk in the United States, appeared before the committee urging that a duty be placed upon sugar of milk amounting to not less than 5 cents per pound and called attention to the fact that in the year 1920 reliable estimates fixed the total United States output of milk sugar for the year at not less than 5,300,000 pounds. Hearings, Committee on Ways and Means on H. R. 7456, Part V, pages 3820, 3821.

It seems to be quite evident, from a consideration of this whole matter, that the Senate Committee on Finance was satisfied with the suggestions of the Tariff Commission and with the action of the House of Representatives in relegating sugar of milk to classification under said paragraph 5. It is true that the Tariff Commission suggested to the Senate Finance Committee that if "specific mention of lactose or milk sugar and maltose or malt sugar is made elsewhere" then a provision might be inserted reading "and other saccharides not specially provided for." Specific mention of milk sugar was not made elsewhere in the bill, and hence no provision was necessary for it as "not specially provided for." It is true the words "and other saccharides" are broad enough to include sugar of milk, but in view of all the facts which we have recited, and of the information available to the Congress, and of the final form of the act, we are convinced no showing is made that it was the congressional intent

to include sugar of milk within the purview of said paragraph 504. In fact, we are led to the opposite conclusion.

We are, therefore, of opinion this is a proper case for the application of the rule of *ejusdem generis* and that the words "and other saccharides" should be restricted to other saccharides of like character, material, or use, to those specifically named in said paragraph 504.

Government counsel call particular attention to our decision in *United States* v. *R. F. Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645, where this court had under consideration paragraph 354, the particular article of importation involved being tweezers. That case did not involve the rule of *ejusdem generis* but had under discussion the doctrine of *noscitur a sociis* and is, in our judgment, not applicable here. Nor do we find in any of the other citations called to our attention by counsel anything which militates against the views hereinbefore expressed by us.

These being our views in the matter, it follows that the protest should have been *sustained,* and the judgment of the United States Customs Court is hereby *reversed* and the cause *remanded* r furth proceedings in conformity herewith.