# United States Court of Appeals for the Federal Circuit

2008-1011

DECKERS CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Patrick D. Gill, Rode & Qualey, of New York, New York, argued for plaintiff-appellant. With him on the brief were Michael S. O'Rourke and William J. Maloney.

Marcella Powell, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Michael W. Heydrich, Office of the Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

2008-1011

DECKERS CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade
in case no. 02-00674, Senior Judge Thomas J. Aquilino, Jr.

_____

DECIDED:  July 2, 2008

_____

Before SCHALL, Circuit Judge, CLEVENGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

CLEVENGER, Senior Circuit Judge.

This customs case concerns the proper classification of three styles of Teva® Sport Sandals:  "Pretty Rugged Sports Sandal," "Terradactyl Sports Sandal," and the "Aquadactyl Sports Sandals" (collectively, "Teva® Sandals").  Deckers Corporation ("Deckers") appeals the final judgment and decision by the United States Court of International Trade, after a trial on the merits, holding that the merchandise at issue was properly classified under subheading 6404.19.35 of the Harmonized Tariff Schedule of the United States ("HTSUS").  Deckers Corp., Inc. v. United States, No. 02-674, 2007 WL 2489657 (Ct. Int'l Trade Sept. 5, 2007).  We affirm.

Teva® Sandals are imported footwear used for athletic purposes. The sandals were designed and developed for human outdoor activity often near or in bodies of water, including 'adventure racing,' beach and trail running, 'canyoneering,' hiking, jogging, mountain biking, power and sail-boating, sport fishing, swimming, triathlon, and 'white water' kayaking and rafting. The sandals have uppers composed of textile materials and soles composed of rubber or plastic. The toe and heel sections of the sandal are open, and the uppers do not enclose the foot and ankle. One style of the Teva® Sandals is depicted in Figure 2 of U.S. Patent No. 4,793,075, as shown below.



FIG _ 2

U.S. Customs and Border Protection ("Customs") classified the merchandise at issue in subheading 6404.19.35, HTSUS, as "Footwear with outer soles of rubber, plastics . . . and uppers of textile materials . . . Other . . . with open toes or open heels . . . Other" at a rate of duty of 37.5% ad valorem. Even though subheading 6404.19.35 describes the Teva® Sandals, Deckers challenged the classification. Deckers asserted that under General Rule of Interpretation 3(a), the Teva® Sandals are more specifically described in subheading 6404.11.80, HTSUS, as "Footwear with outer soles of rubber, plastics, leather or composition leather and uppers of textile materials . . . Footwear with outer soles of rubber or plastics: . . . Sports footwear; tennis shoes, basketball shoes, gym

shoes, training shoes and the like. . . Valued over $6.50 but not over $12/pair" at a rate of duty of ninety cent per pair plus twenty percent ad valorem. Deckers argued that Additional Note 2 to Chapter 64 requires all athletic footwear (other than items specifically exempted not affecting the Teva® Sandals) to be classified under subheading 6404.11.80, and that in any event, the Teva® Sandals are like the exemplars "tennis shoes, basketball shoes, gym shoes, training shoes . . . ." Deckers filed a protest on the same basis, which Customs denied. Customs rejected Deckers's Note 2 argument and reasoned that the sandals were not "like" the exemplars named in subheading 6404.11.80 because the exemplars named therein have a "secure and supportive enclosure for the foot," and none of the named exemplars are "open at the toes or the heel."

II

Deckers filed suit in the Court of International Trade, asserting that Customs erred in failing to classify the Teva® Sandals under subheading 6404.11.80. The court first entertained the government's motion for summary judgment, which argued that the Teva® Sandals had been properly classified under subheading 6404.19.35. Deckers reframed the issue on summary judgment as whether "all athletic footwear" is properly classified under subheading 6404.11.80, and whether there are genuine issues of material fact as to whether the Teva® Sandals are "athletic footwear."

The court covered several points in its opinion denying the government's summary judgment motion. First, the court rejected as "tenuous" Deckers's interpretation of Additional Note 2 to the effect that all athletic footwear (with exceptions not relevant to this case) must be classified under subheading 6404.11.80. Second, the

court entertained the rule of ejusdem generis, an interpretative tool in customs law that helps in deciding whether merchandise is "like" named exemplar merchandise. In this case, the rule would ask whether the Teva® Sandals are like tennis shoes, basketball shoes, gym shoes, and training shoes. The court noted that in appearance alone, each of the exemplars differs significantly from the Teva® Sandals. The Court of International Trade, however, denied the government's motion for summary judgment, in favor of a trial on the issue of whether the openness of the Teva® Sandals leaves them unsuitable for activities implied by the exemplars of subheading 6404.11.80, namely tennis shoes, basketball shoes, gym shoes or training shoes.

After trial, the court issued its second opinion. The court noted that the evidence at trial regarding the Teva® Sandals "attenuates" Customs's view that the Teva® Sandals are not suitable for uses associated with the exemplars, even though the Teva® Sandals might not be the preferred footwear for those uses. Because the evidence at trial showed that the Teva® Sandals are, for many sports, athletic footwear, Teva renewed its statutory argument, which the court again rejected. Instead, the court reasoned that "sandals" as they have been understood for millennia, are different from "shoes," which subheading 6404.11.80 covers. Citing portions of the record that depict the differences between sandals and the listed exemplars, the court held that the Teva® Sandals, as such, could not be like the exemplars, and therefore were not entitled to classification under subheading 6404.11.80.

Deckers timely appealed. We have jurisdiction pursuant to 28 U.S.C. §1295(a)(5).

III

The interpretation of the headings and subheadings of the HTSUS is a question of law, which we review without deference. MetChem, Inc. v. United States, 513 F.3d 1342, 1345 (Fed. Cir. 2008). A classification decision involves two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2) determining which heading the particular merchandise falls within, which is a question of fact. Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006). We review questions of law de novo, including the interpretation of the terms of the HTSUS, whereas factual findings of the Court of International Trade are reviewed for clear error. Home Depot U.S.A., Inc. v. United States, 491 F.3d 1334, 1335 (Fed. Cir. 2007). See also Agfa Corp. v. United States, 520 F.3d 1326, 1328 (Fed. Cir. 2008) ("The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision is a question of law which we review de novo."); Marcel Watch Co. v. United States, 11 F.3d 1054, 1056 (Fed. Cir. 1993) (same); Lynteq, Inc. v. United States, 976 F.2d 693, 696 (Fed. Cir. 1992) (same).

IV

On appeal, Deckers renews its statutory interpretation argument based on Additional Note 2. It also asserts that the Court of International Trade erred in its application of the rule of ejusdem generis. Finally, Deckers argues that the court's analysis of the Teva® Sandals as not being "shoes" is incorrect. We treat each argument in turn.

A

Deckers argues that Additional U.S. Note 2 has clear language that "defines the term in issue as athletic footwear." Additional Note 2 to Chapter 64, HTSUS, provides that:

> For the purposes of this chapter, the term "<u>tennis shoes, basketball shoes, gym shoes, training shoes and the like</u>" covers athletic footwear other than sports footwear (as defined in subheading note 1 above), whether or not principally used for such athletic games or purposes. (Emphasis in original.)

Deckers argues that the trial court erred by disregarding the defining language of the statutory chapter note. The government responds that Note 2 states that the phrase "tennis shoes, basketball shoes, gym shoes, training shoes and the like" in subheading 6404.11.80, HTSUS, was to cover athletic footwear regardless of whether that specific footwear was principally used for "such athletic games or purposes." In the government's view, the Note is designed to explain that "use" is not a factor to be considered in the <u>ejusdem generis</u> analysis.

Deckers's proffered interpretation of Additional Note 2 lacks support. It assumes that the inclusion of the phrase "athletic footwear" in Note 2 is for the purpose of subsuming all athletic footwear within 6404.11.80, HTSUS, regardless of whether such athletic footwear bears any similarity to the exemplars specifically enumerated in the subheading. Such an interpretation reads out any purpose for the enumerated list and the limited explanation of scope that Note 2 provides in stating that "tennis shoes, basketball shoes, gym shoes, training shoes and the like covers athletic footwear" whether or not principally used for "<u>such</u> athletic games or purposes." The more reasonable interpretation of Note 2 is that the placement of the phrase "athletic

footwear" was to conveniently group the enumerated list for purposes of explaining that "use" would not itself determine the proper classification.

The trial court found, as a matter of fact, that the imported goods are sold as "athletic footwear." Deckers, 2007 WL 2489657, at *2 (stating "plaintiff bore its burden of proof with regard to its factual averments, e.g., . . . the imported merchandise is sold as athletic footwear."). We discern no clear error that would warrant disturbing this finding of fact. However, we reject Deckers's contention that this fact calls for the legal conclusion that the goods are properly classified in 6404.11.80. Note 2 provides no more than the conclusion that the phrase "tennis shoes, basketball shoes, gym shoes, training shoes and the like" covers this type of athletic footwear even if such footwear is not principally used for participation in tennis, basketball, gym sports, athletic training, or the like. Accordingly, we also reject the notion that Congress intended to substitute all athletic footwear (other than the narrow exception recited) for the plain language in the subheading that enumerates tennis shoes, basketball shoes, gym shoes, training shoes and the like. Our inquiry therefore calls for us to assess whether the Teva® Sandals are "the like," i.e., whether the imported goods are like tennis shoes, basketball shoes, gym shoes and training shoes.

B

The principle of ejusdem generis guides our interpretation of HTSUS provisions such as those in issue in this case. See Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392 (Fed. Cir. 1994). The principle of ejusdem generis requires anything falling under the general term "or the like" to possess the same essential characteristic of the specific enumerated articles. Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1292

(Fed. Cir. 2008). The phrase "or the like" means "the same, or very similar to." Id. To determine the essential characteristic, courts may consider attributes such as the purpose, character, material, design, and texture. See, e.g., United States v. Danmak Trading Co., Inc., 43 C.C.P.A. 77 (1956); Merck & Co., Inc., v. United States, 19 C.C.P.A. 16 (1931).

As a threshold matter, Deckers contends that the trial court erroneously employed the rule of interpretation to subheading 6404.11.80, HTSUS, in lieu of the statutory definition of the phrase that Additional Note 2 provides. As discussed above, we reject Deckers's contention that Additional Note 2 to Chapter 64 is a "definition" to the operative phrase in subheading 6404.11.80. Accordingly, we disagree that the trial court erred in this regard. Notwithstanding that point, Deckers argues that the trial court committed reversible error by misapplying the rule of ejusdem generis to the facts, citing to trial testimony that it contends established that Teva® Sandals are ejusdem generis with the defined exemplars. However, Deckers's ejusdem generis argument depends solely on its proffered interpretation of Additional Note 2, evidenced by its assertion that "the fact that the imported articles and the named exemplars are athletic footwear is what makes all of them ejusdem generis. That they are all used for athletic games and purposes is the defining characteristic of all the articles." The only structural or design similarity that Deckers identifies in its ejusdem generis analysis is that the composition and construction of the Teva® Sandals' soles are similar to the lightweight material used in most running shoes, known as ethyl vinyl acetate (EVA).

The government contends that the sandals at issue are not ejusdem generis with the named exemplars in subheading 6404.11.80, HTSUS. According to the

government, the evidence at trial demonstrated that the essential characteristic that unites the named exemplars is its design, including the enclosed upper, which contains features that protect against abrasion and impact, and the named exemplars' purpose. For example, one of the government's witnesses, Dr. Joseph Hamill, testified that protection from injury is an important concern when designing an athletic shoe. In light of that concern, according to witness testimony, the uppers of tennis shoes, basketball shoes, gym shoes, and training shoes are designed to accommodate the wearer's movements while protecting the foot against abrasion and impact to heel, toe, and sides of the wearer's foot. Therefore, the evidence adduced at trial showed that the enclosed uppers of the named exemplars contain features such as a heel counter, toe cap, ridge around the edge of the mid-sole, and other stabilizing features, all of which offer a measure of protection from impact and abrasion.

There was also testimony at trial demonstrating that the sandals at issue differ from the named exemplars in that they do not have an enclosed upper. Dr. Hamill testified that "the major difference [between the Teva® Sandals and the exemplars in subheading 6404.11.80, HTSUS] is that there is no upper per se with Plaintiff's Exhibit 1 [a Teva® Sandal]. There is a strapping system but there is no upper and as a result because there is no upper, there is no heel counter, nor is there any toe cap." When asked at trial whether there are differences between the Teva® Sandal and a basketball shoe based on the fact that there is a specific sporting activity for which the Teva® Sandals were designed, the inventor of the Teva® Sandals, Mark Thatcher, responded: "Absolutely and most of those differences are the upper."

The government also posits that the purpose of the exemplars differ from the purpose of the sandals at issue. The testimony at trial demonstrated that the named exemplars of subheading 6404.11.80 are designed for activity that takes place on the ground or typically dry surfaces, as the performance of such footwear worsens when worn during activities conducted in water. Conversely, the Teva® Sandals are primarily marketed for water activities. At trial, the inventor testified that he was "trying to invent a new river shoe." The government thus argues that the Teva® Sandals not only differ in appearance and structure but also in its designed purpose. We agree.

The evidence adduced at trial established that the fundamental feature that the exemplars share is the design, specifically the enclosed upper, which contains features that stabilize the foot, and protect against abrasion and impact. Because the sandals at issue have open toes and open heels, and lack the features of the named exemplars of 6404.11.80, HTSUS, the imported goods are not classifiable under that subheading, notwithstanding their claimed status as athletic footwear.

C

Deckers reads the opinion of the Court of International Trade to have held that subheading 6404.11.80 covers shoes, and that the Teva® Sandals are sandals, not shoes, and therefore cannot fall under subheading 6404.11.80. Deckers reads too much into the court's opinion.

The Court of International Trade noted that the form of footwear described in subheading 6404.11.80 is a "shoe," which of course is correct. In common parlance, as tested by standard dictionaries, there can be no doubt that sandals are "shoes." Whether sandals are the kind of shoes described by the exemplars of subheading

6404.11.80, and their like, is the question. The court answered that question by observing that the term "shoe" as used in subheading 6404.11.80 does not cover the kind of shoe typified by the Teva® Sandals. Deckers, 2007 WL 2489657, at *4 ("[T]here is and can be little doubt that the term does not cover the Teva®'s at issue.").

Even Deckers acknowledges in its brief that the court compared samples of the imported merchandise, Deckers's Exhibits 1, 2, and 3 and the government's Exhibit N with depictions of the named exemplars in the government's Exhibit B-1, -2, -3, and -4, and trial testimony pointing out various features of the named exemplars. At oral argument, counsel for the government pointed to the same signal in the trial court's opinion as providing the apparent rationale for the trial court's judgment. Oral Arg. 19:00 – 20:01. We agree with the Court of International Trade that the Teva® Sandals are not the kind of shoes to which subheading 6404.11.80 refers, for the same reasons expressed in the ejusdem generis analysis.

## CONCLUSION

The merchandise at issue in this case is properly classified under subheading 6404.19.35, HTSUS, because the goods indisputably fit within the plain language of that unambiguous subheading. Subheading 6404.11.80, HTSUS, in view of Note 2, does not provide any alternative basis for the sandals' classification as the imported goods are not "like" the enumerated exemplars of subheading 6404.11.80.

For the foregoing reasons, the judgment of the United States Court of International Trade is affirmed.

## COSTS

Each party shall bear its own costs for this appeal.

<u>AFFIRMED</u>